UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AARON M.O.,

                        Plaintiff,

    v.                                               **23-CV-623-A**
                                               **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____


    **I.**       **INTRODUCTION**

      The Plaintiff Aaron M.O., brings this action against the Commissioner of

Social Security (hereinafter the "Commissioner"), seeking judicial review of the

Commissioner's determination denying Plaintiff Supplemental Security Income (SSI)

under the Social Security Act. Plaintiff (Dkt. No. 4) and the Commissioner (Dkt. No.

5) have filed cross-motions for judgment on the pleadings. For the reasons set forth

below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is

**GRANTED**.

    **A. Factual Background and Procedural History**

      Plaintiff was born in 1989 (Tr. 233)[1], and his work history reflected that prior to

February of 2020, he worked as an electrician. (Tr. 235).  On August 29, 2020, he

filed an application for SSI alleging disability beginning on February 5, 2020. (Tr. 15).

_____

[1] References preceded by "Tr." are to pages in the consecutively paginated Bates-
stamped administrative transcript set forth at Dkt. No. 3.

His claim for disability was based on the fact that he had spinal fusion surgery. (Tr. 244).

Plaintiff's application for SSI was initially denied on March 8, 2021 (Tr. 87), and upon reconsideration on May 14, 2021. (Tr. 115). Plaintiff requested a hearing before an Administrative Law Judge ("the ALJ"), and on March 3, 2022, and July 12, 2022, Plaintiff and his attorney appeared telephonically before ALJ Linda Stagno; Plaintiff testified as did a vocational expert.  (Tr. 15; 32-72).  On October 27, 2022, the ALJ rendered a written decision finding that Plaintiff was not disabled under the SSA. (Tr. 12).   On May 3, 2023, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1).

## B.  The ALJ's Decision

The ALJ determined, under step one, that Plaintiff had not engaged in substantial gainful activity since February 5, 2020, the date he first sought benefits. (Tr. 17). Under step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar radiculopathy and cervicalgia. (Tr. 17).  The ALJ further found that Plaintiff had alleged at times additional impairments including mild nasal septum deviation, allergic rhinitis, headaches, and a history of mild opioid dependence,[2] but that such conditions were non-severe based upon scant reference in the record to

---

[2] The ALJ noted that Plaintiff's opioid dependence continues to be maintained on suboxone through his primary care providers and that such condition is "uncomplicated" and has been "stable for many years." (Tr. 18).

meaningful ongoing symptoms, complications, or limitations regarding these conditions. (Tr. 17-18).

At step three, the ALJ concluded that Plaintiff's impairment or combination of impairments did not meet or equal one of the impairments listed in 20 C.F.R. 404.1520(d), 416.1525, and 404.1526. (Dkt. No. 5, p. 24).  The ALJ next determined "upon careful consideration of the entire record" that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except he: can stand for one hour at a time and then must reposition for 5 minutes; can push/pull frequently; and can occasionally climb ladders, ramps, or stairs, stoop, crouch, kneel, and crawl. (Tr. 19).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as an electrical helper or electrician. (Tr. 24).

At step five, the ALJ determined, based upon the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy at Plaintiff can perform. (Tr. 25).  On that basis, the ALJ determined that Plaintiff was "not disabled." (Tr. 25-26).

**C. The Parties' Contentions**

In seeking this Court's review of the ALJ's determination, Plaintiff argues the ALJ failed to support her decision with substantial evidence, by: (1) crafting an arbitrary sit/stand option without explanation or support in the record; (2) improperly

evaluating the opinion of Dr. Zinno pursuant to the regulatory factors; and (3)

improperly relying upon Plaintiff's daily activities. (Dkt. No. 4-1, p. 7; Dkt. No. 6).

Defendant responds that the ALJ committed no error and that, therefore, the ALJ's

decision should be affirmed.  (Dkt. No. 5 and 5-1).

## II.    LEGAL STANDARD

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to

determining whether the SSA's conclusions were supported by substantial evidence

in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697

F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not

this Court's function to make a *de novo* determination as to whether the claimant is

disabled; rather, "the reviewing court is required to examine the entire record,

including contradictory evidence and evidence from which conflicting inferences can

be drawn" to determine whether the SSA's findings are supported by substantial

evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*;

*Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ...

that the factual findings of the Secretary, if supported by substantial evidence, shall

be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds

facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d at 151 (internal quotations omitted).

## B.  Legal Standard to Determine Disability

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v.*

*City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

## III.   ANALYSIS

### A. The ALJ's Inclusion of a Sit/Stand Option in the RFC Is Supported by Substantial Evidence

In concluding that Plaintiff had the ability to conduct light work, the ALJ crafted an RFC limitation which determined, *inter alia*, that Plaintiff "stand for one hour at a time and then must reposition for 5 minutes." (Tr. 19). Plaintiff claims that the ALJ erred because "no opinion directly supports the ALJ's sit/stand option" which was "crafted … arbitrar[ily and]… without explanation or support in the record." (Dkt. No. 4-1, p. 9).   Notwithstanding Plaintiff's contention, however, the ALJ's finding here, allowing Plaintiff to shift position once per hour, is in line with what the ALJ found to be Dr. Zinno's "somewhat persuasive" opinion that Plaintiff should change position one to two times per hour, as needed. (Tr. 710). As the ALJ explained, however, Dr. Zinno's opinion, which was rendered in December of 2020, indicated a somewhat higher degree of restriction than was supported by the overall record. (Tr. 23).  In

that regard, the ALJ's found that Dr. Zinno's own examination findings involving Plaintiff were "modest," and included findings which determined that Plaintiff exhibited a normal gait and intact strength, reflexes, and sensation (Tr. 23) and which determined that Plaintiff did not need assistive devices or physical therapy. (Tr. 22). As the ALJ correctly observed, Plaintiff himself reported to Dr. Zinno his ability to participate in house chores (while refraining from any heavy lifting) and to go for walks with his kids on a frequent basis. (Tr. 708).

As the ALJ supportably found, Plaintiff's low back impairment improved over time as did his pain complaints. (Tr. 20-23).

Back in 2014, long before his onset date, Plaintiff underwent a lumbar fusion procedure, after which he was able to return to working as an electrician on a consistent basis. (Tr. 20). Following a motor vehicle accident in late-August of 2019, Plaintiff went to the emergency department of a local hospital complaining of pain in his neck, low back, and left arm, as well as headaches. Imaging studies of the lumbar spine showed that he had fusion surgery but indicated that there was no spondylolisthesis and no acute fracture or dislocation, while cervical x-rays were unremarkable. A contemporaneous physical examination showed no sensory deficits, 5/5 strength throughout, and otherwise benign findings, and Plaintiff was discharged home with prescriptions for naproxen and Flexeril.  (Tr. 20).

About 5 years later, in September of 2019, Plaintiff went to Pinnacle Orthopedics, where he was treated by Dr. Cameron Huckell for his ongoing complaints of back and neck pain following the accident. (Tr. 20).  Physical

examination showed mild cervical and lumbar paravertebral muscle rigidity, some decreased cervical range of motion, positive straight leg raising bilaterally at 40 degrees, but also normal gait, an ability to stand on the heels and toes with good balance and coordination, no use of an assistive walking device, 5/5 strength of the bilateral upper and lower extremities, firm grip strength bilaterally, 2+ reflexes of the upper and lower extremities, intact sensation in all major dermatomes, and negative Hoffman's sign. (Tr. 20).  Subsequent imaging studies of the lumbar spine in September and October 2019, including CT and MRI studies, showed findings indicating interval changes of the Plaintiff's lumbar interbody fusion at L4-5 and L5-S1, with evidence for pseudoarthrosis at both levels, as well as mild residual posterolateral ridging, more prominent on the left at the L5-S1 level.  (Tr. 21).  A subsequent October MRI showed straightening of the cervical lordosis, likely due to muscle spasm, and small posterior bulging at the C4-5 and C5-6 levels minimally effacing the anterior arachnid space, without associated central foraminal stenosis, and unremarkable findings at the remaining levels.  (Tr. 21).

In light of the foregoing, and Plaintiff's persistent symptoms, in November 2019, Dr. Huckell identified Plaintiff as a candidate for surgical repair of his pseudoarthrosis with a minimally invasive approach.  While Plaintiff continued to work until January of 2020, in February of 2020, did eventually undergo the recommended surgical procedure, performed by Dr. Huckell on the alleged onset date in early February 2020 (Tr. 21).

In a post-operative follow-up visit in March of 2020, Dr. Huckell noted the Plaintiff indicated that he had some pain along the posterior iliac crest, but otherwise had improved pain and no leg pain. Dr. Huckell noted the Plaintiff was early in his post-operative course, while also indicating Plaintiff may increase activities as tolerated, may begin to wean off his collar/brace, and could begin to drive (Tr. 21).

A few months later, in June 2020, Dr. Huckell noted that Plaintiff reported feeling improved and stating he felt "pretty good," while still endorsing some residual pain in the right lumbar region and some residual numbness/tingling in his legs, more in the right. Dr. Huckell also referenced contemporaneous x-rays showing satisfactory position of the Plaintiff's lumbar instrumentation, with continued consolidation of the fusion and no evidence of loosening or migration of instrumentation. Dr. Huckell noted Plaintiff continued to improve on his own and again recommended that Plaintiff continue to advance his activities as tolerated, with plans to discuss Plaintiff's return to work at his next follow-up visit. (Tr. 21).

The ALJ observed that a Pinnacle treatment notes from August of 2020 (Tr. 21) and September of 2020, approximately seven months after his minimally invasive surgery to repair his pseudoarthrosis, reflects that Plaintiff's report of residual low back pain but, overall, he continued to do well. (Tr. 22; Tr. 713). X- rays showed improved consolidation of the fusion and satisfactory hardware positioning. (Tr. 22; Tr. 714-16). At the same visit, Plaintiff reported he had started to interview for new electrician positions. *Id*. The examining physician noted Plaintiff was improving,

he started to exercise within his limits and that they would likely have him return to work at his next appointment or sooner. (Tr. 22; Tr. 718).

The ALJ additionally noted that in February 2021, Plaintiff again reported to Pinnacle providers that he had some residual lumbar spine pain but, overall, his pain had improved. (Tr. 22; Tr. 789). Physical examination findings again revealed some decreased spinal range of motion and positive straight leg raising bilaterally, but also normal gait, the ability to stand on the heels and toes with good balance and coordination, no use of an assistive device, full strength of the bilateral upper and lower extremities, firm grip strength bilaterally, 2+ reflexes of the upper and lower extremities, intact sensation in all major dermatomes, and negative Hoffman's sign bilaterally. (Tr. 22; Tr. 790). Reference was also made to contemporaneous lumbosacral spine x-rays showing satisfactory hardware and a well-consolidated fusion mass. *Id*. The treating provider indicated Plaintiff "is improved" and "is doing well." (Tr. 22; Tr. 793). Plaintiff continued to interview for new electrician positions, although he had not found a position yet. (Tr. 22; Tr. 789-94).

Also in February 2021, Plaintiff presented to consultative examiner Dr. Abrar Siddiqui, for an internal medicine examination. (Tr. 22-23; Tr. 682-85). Plaintiff reported his activities of daily living as including cooking, cleaning daily, laundry, shopping as needed, childcare daily, showering, and dressing himself daily, while he also reported enjoying reading and described walking as his "hobby." (Tr. 22; Tr. 683). Upon physical examination, Dr. Siddiqui noted Plaintiff complained of neck and low back pain while performing full cervical and lumbar range of motion maneuvers.

(Tr. 22; Tr. 684). Otherwise, Dr. Siddiqui noted essentially benign findings, including normal gait, full squat, an ability to heel and toe walk without difficulty, no use of assistive devices, full ranges of motion of major musculoskeletal groups, no sensory deficits, physiologic and equal deep tendon reflexes, 5/5 strength in the upper and lower extremities, 5/5 grip strength bilaterally, and intact hand and finger dexterity. (Tr. 23; Tr. 683-84). Dr. Siddiqui opined Plaintiff had only a mild limitation in his ability to do climbing stairs, bending, lifting, pushing, pulling, and carrying of heavy objects. (Tr. 23; Tr. 685). The ALJ further noted that subsequent primary care records dated 2021 and into 2022 similarly consistently show normal musculoskeletal and neurologic exam findings, such as normal musculoskeletal ranges of motion and intact sensation, motor function, and reflexes. (Tr. 23; Tr. 806-07, 816-17, 827-28, 837, 848-49, 859, 871).

Finally, Plaintiff's subsequent primary care records during 2021 and into 2022 similarly consistently showed normal musculoskeletal and neurologic exam findings, such as normal musculoskeletal range of motion and intact sensation, motor function, and reflexes. (Tr. 23).

In this Court's view, the ALJ properly relied on multiple evidentiary sources to arrive at the RFC finding that she did, and she was not required to base the RFC directly on any one medical opinion. *Nida A. v. Comm'r of Soc. Sec.*, No. 1:21-CV-569-DB, 2023 WL 6880467, at *4 (W.D.N.Y. Oct. 18, 2023). The Second Circuit has accordingly rejected the notion that an ALJ impermissibly relies upon her "lay opinion" when she derives specific RFC limitations without the benefit of a medical

opinion. *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) ("An

RFC finding is administrative in nature, not medical, and its determination is within

the province of the ALJ, as the Commissioner's regulations make clear. The ALJ did

not draw medical conclusions; instead, and pursuant to h[er] statutory authority, the

ALJ considered the medical and other evidence in the record in its totality to reach

an RFC determination.").  As the Second Circuit has observed:

> The ALJ is permitted to discount the opinion of a … physician if it is
> inconsistent with other substantial evidence. And the ALJ bears "the
> final responsibility" for making RFC determinations. It follows from
> these basic principles that the ALJ's RFC conclusion need not perfectly
> match any single medical opinion in the record, so long as it is
> supported by substantial evidence. In so holding, we here reiterate a
> point that this Court has previously made summarily… an ALJ's
> conclusions need not "perfectly correspond with any of the opinions of
> medical sources cited in his decision" because the ALJ is "entitled to
> weigh all of the evidence available to make an RFC finding that [is]
> consistent with the record as a whole."

*Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)(citations omitted); *see*

*Jennifer C. v. Comm'r of Soc. Sec.*, 2023 WL 1481593, at *4 (W.D.N.Y. Feb. 2,

2023) (finding sit/stand option was broadly supported by ALJ's analysis of the

plaintiff's subjective complaints considered in the context of normal

examination findings, and rejecting the notion that it needed to be based upon

more specific evidence).  Here, this Court finds that substantial evidence

supports the RFC limitations determined by the ALJ.

### B.  The ALJ Properly Evaluated the Opinion of Dr. Zinno Pursuant to the Regulatory Factors

Plaintiff next asserts that the ALJ erred in failing to consider Dr. Zinno's

medical opinions and evaluating their persuasiveness based on supportability and

consistency.  (Dkt. No. 4-1, pp. 11-15).  ALJs no longer give "specific evidentiary

weight to medical opinions," but rather consider all medical opinions and "evaluate

their persuasiveness" based on supportability, consistency, relationship with the

claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).

The ALJ is required to "articulate how [she] considered the medical opinions" and

state "how persuasive" she finds each opinion, with a specific explanation provided

as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2);

The "most important factors we consider when we evaluate the persuasiveness of

medical opinions and prior administrative medical findings are supportability...and

consistency." See § 416.920c(a).

Under the supportability factor, the more a medical opinion or prior

administrative medical finding is reinforced by "relevant ... objective medical

evidence and supporting explanations," the "more persuasive" it will be. 20 C.F.R. §

404.1520c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532,

2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks

how well a medical source supported their opinion(s) with objective medical

evidence and supporting explanations.") Under the consistency factor, a medical

opinion or prior administrative medical finding is "more persuasive" if it is consistent

"with the evidence from other medical sources and nonmedical sources in the

13

claim." 20 C.F.R. § 404.1520c(c)(2); *Vellone v. Saul*, No. 1:20-cv-00261, 2021 WL

319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report-recommendation adopted*, 2021 WL

2801138 (S.D.N.Y. July 6, 2021) ("Simply put, consistency is an all-encompassing

inquiry focused on how well a medical source is supported, or not supported, by the

entire record.").

In this case, and as detailed in the preceding section, the ALJ, while finding

Dr. Zinno's opinion "somewhat persuasive," also provided a thorough evaluation of

the supportability and consistency of Dr. Zinno's opinion in view of the other medical

evidence provided by Dr. Huckell, providers at Pinnacle Orthopedics, and Dr.

Siddiqui. (Tr. 20-23).  Indeed, the objective medical evidence and supporting

explanations offered by those who examined and treated Plaintiff reveal, as the ALJ

appropriately concluded that Plaintiff's statements concerning the intensity,

persistence and limiting effects of his conditions were "not entirely consistent with

the medical evidence and other evidence in the record." (Tr. 20).

### C. The ALJ Properly Considered Plaintiff's Activities of Daily Living When Making Her RFC Finding

Finally, Plaintiff argues that the ALJ erred in failing to analyze how Plaintiff's

activities of daily living are consistent with light work, and that her reliance on those

activities in making her RFC finding was unfair. (Dkt. No. 4-1, pp. 15-17).

Plaintiff argues that the ALJ did not show how she determined that Plaintiff's

activities of daily living were consistent with light work and that the ALJ's

consideration of those daily activities did "little to show [he] could work full time in the

national economy." (Dkt. No. 4-1, p. 15-16). The ALJ, however, did not rely on the

Plaintiff's daily activities to show that he could perform light or full-time work, but

rather to demonstrate that Plaintiff was not as debilitated by his impairments as he

otherwise alleged. Moreover, the finding was made in combination with the objective

medical evidence and reports Plaintiff made to medical providers that were

inconsistent with his allegations of greater debilitation. This analysis is entirely

proper and consistent with the Commissioner's regulations. 20 C.F.R. §

404.1529(c)(3)(i).  Indeed, such evidence, which the ALJ was required to consider,

likewise supports the findings that Plaintiff's complaints about the severity of his

conditions were less than fully credible. *Sabellico v. Comm'r of Soc. Sec.*, No. 21-

CV-2777(EK), 2023 WL 6214214, at *6 (E.D.N.Y. Sept. 25, 2023).

In the end, this Court concludes that the ALJ was entitled to weigh all the

available evidence to reach an RFC finding that was consistent with the record as a

whole, even if it did not perfectly correspond with any one medical opinion. 20 C.F.R.

§ 416.927(d)(2); 20 C.F.R. § 416.945(a)(3); *Trepanier v. Comm'r of Soc. Sec.

Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed App'x 53, 56 (2d

Cir. 2013).  Because the ALJ provided an adequate basis for meaningful judicial

review, applied the proper legal standards, and identified substantial evidentiary

support for the RFC finding, this Court must defer to the ALJ's fact-finding about

Plaintiff's RFC and affirm the ALJ's decision.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings

(Dkt. No. 4) is **DENIED** and the Commissioner's motion for judgment on the

pleadings (Dkt. No. 5) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its

entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

_s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  April 15, 2024
        Buffalo, New York